## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AERO FULFILLMENT SERVICES CORPORATION**<br>3900 Aero Drive<br>Mason, Ohio 45040<br><br>           **Plaintiff,**<br><br>v.<br><br>**JOYSUDS, LLC**<br>4 Greenwich Office Park<br>Greenwich, Connecticut 06831<br><br>           **Defendant.** | COMPLAINT FOR MONETARY DAMAGES<br><br>**Case No.:** _____<br><br>**Judge:** _____ |

Plaintiff Aero Fulfillment Services Corporation ("Aero"), through its undersigned counsel, files its Complaint For Monetary Damages against Defendant JoySuds, LLC ("JoySuds") and respectfully states as follows:

## THE PARTIES

1. Aero is an Ohio corporation with its principal place of business located at 3900 Aero Drive, Mason, Ohio 45040.

2. JoySuds is a Delaware limited liability company with its principal place of business located at 4 Greenwich Office Park, Greenwich, Connecticut 06831.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

1

4. Specifically, Aero, an Ohio company with its principal place of business in Ohio, is a citizen of Ohio. JoySuds is a limited liability company whose sole member is Piney Lake Capital Management LP, whose partners are Michael Lazar (an individual and a citizen of Connecticut), and Piney Lake LLC. On information and belief, Piney Lake LLC's sole member is Mr. Lazar. Accordingly, JoySuds is a citizen of Connecticut.

5. The parties expressly agreed through their Master Service Agreement to jurisdiction and venue in the state and federal courts of New York.

## FACTUAL BACKGROUND

**A.   The Parties Enter Into the Master Service Agreement.**

6. Aero is a fulfillment services company based in Ohio. It provides warehousing, inventorying, order processing, packaging, and shipping services to customers around the country.

7. JoySuds is a subsidiary of a capital management firm, Piney Lake, which acquired the branding rights to "Joy" dish detergent products in 2019.

8. On January 12, 2021, the parties entered into a Master Services Agreement (the "Agreement"), under which Aero agreed to provide fulfillment services to JoySuds. A copy of the Agreement is attached as **Exhibit 1**.

9. Specifically, Aero agreed to provide JoySuds the following services (the "Services") to facilitate the distribution of JoySuds' products: (1) storage; (2) receiving; (3) inventory management; (4) order handling and processing; (5) packaging; (6) return processing; (6) account management; (7) access to Aero's proprietary inventory management software; and (7) management of fright, parcel, and transportation services. (Agreement § 1.1; Exhibit A to the Agreement.)

10. With regard to freight, parcel, and transportation services (the "Transportation Services"), Aero agreed to "work with a network of carries and brokers to secure inbound transportation services from manufacturing facilities as well as secure outbound transportation services from Aero's facility to [JoySuds'] clients." (Exhibit A to the Agreement.)

11. Aero's fees for the Services (the "Service Fees") were itemized in Exhibit B of the Agreement. (Agreement § 2.1.) As relevant to this matter, JoySuds agreed to pay Aero the incurred cost of Transportation Services plus 9% (the "Transportation Fees"). (Exhibit B to the Agreement.)

12. JoySuds also agreed to pay Aero a monthly minimum (the "Monthly Minimum") of $62,740.00 for the following Services as defined in Exhibit B to the Agreement: (1) $20,000.00 for Labor; (2) $35,190.00 for Storage; (3) $4,800.00 for Capital Expense; and (4) $2,750 for Technology. (Agreement § 2.1; Exhibit B to the Agreement)  If Aero's total Service Fees for Storage or Labor during a given month were less than the applicable Monthly Minimum, JoySuds agreed to pay Aero the difference between the applicable Monthly Minimum and the total Storage or Labor Services Fees incurred. (Agreement § 2.1.)

13. The Agreement established a specific pricing schedule that required that JoySuds pay Aero within 30 days upon receipt of Aero's monthly invoice or else JoySuds would be in default. (Agreement § 2.2.)

14. The Agreement permitted JoySuds to dispute Aero's invoices so long as the dispute was in good faith. (Agreement § 2.2.) To qualify as a good faith dispute, Aero was required to "promptly notify Aero of the charges and fees in dispute." (Agreement § 2.2.) Aero was then required to provide JoySuds an "explanation and documentation to support the fees and charges." (Agreement § 2.2.)

10. With regard to freight, parcel, and transportation services (the "Transportation Services"), Aero agreed to "work with a network of carries and brokers to secure inbound transportation services from manufacturing facilities as well as secure outbound transportation services from Aero's facility to [JoySuds'] clients." (Exhibit A to the Agreement.)

11. Aero's fees for the Services (the "Service Fees") were itemized in Exhibit B of the Agreement. (Agreement § 2.1.) As relevant to this matter, JoySuds agreed to pay Aero the incurred cost of Transportation Services plus 9% (the "Transportation Fees"). (Exhibit B to the Agreement.)

12. JoySuds also agreed to pay Aero a monthly minimum (the "Monthly Minimum") of $62,740.00 for the following Services as defined in Exhibit B to the Agreement: (1) $20,000.00 for Labor; (2) $35,190.00 for Storage; (3) $4,800.00 for Capital Expense; and (4) $2,750 for Technology. (Agreement § 2.1; Exhibit B to the Agreement)  If Aero's total Service Fees for Storage or Labor during a given month were less than the applicable Monthly Minimum, JoySuds agreed to pay Aero the difference between the applicable Monthly Minimum and the total Storage or Labor Services Fees incurred. (Agreement § 2.1.)

13. The Agreement established a specific pricing schedule that required that JoySuds pay Aero within 30 days upon receipt of Aero's monthly invoice or else JoySuds would be in default. (Agreement § 2.2.)

14. The Agreement permitted JoySuds to dispute Aero's invoices so long as the dispute was in good faith. (Agreement § 2.2.) To qualify as a good faith dispute, Aero was required to "promptly notify Aero of the charges and fees in dispute." (Agreement § 2.2.) Aero was then required to provide JoySuds an "explanation and documentation to support the fees and charges." (Agreement § 2.2.)

B.  **JoySuds' Breach and Aero's Termination of the Agreement.**

15.  Absent termination, the Agreement would last for a three-year term, with an expiration date of January 12, 2024.

16.  The Agreement was terminable for cause by Aero, in pertinent part, if JoySuds failed to pay any amount due under the Agreement within thirty days after written notice was provided to JoySuds of its failure to pay the amount.

17.  Throughout the course of the parties' relationship, JoySuds was chronically delinquent in making payments to Aero. Aero was forced to repeatedly follow up with JoySuds to ensure payments were received.

18.  JoySuds' failure to pay Aero came to a head when JoySuds, without justification, failed to pay Aero's October and November 2022 invoices. Copies of Aero's October and November 2022 invoices, totaling $496,514.96, are attached as **Exhibit 2**.[1]

19.  Aero provided written notice to JoySuds on December 6, 2022 that payment for the October invoice was past due. In response, JoySuds demurred, stating that it needed time to "discuss the invoice holistically." Aero continued to follow up and JoySuds continued to delay by stating it needed more time to review the invoices.

20.  Eventually, JoySuds informed Aero that it was disputing both the October and November invoices because, in JoySuds' view, the associated Transportation Fees did not "seem to align with reality" given JoySuds' belief that there were "clear trends that shipping rates ha[d] been softening for months." According to JoySuds, these so-called market trends should have resulted in lower Transportation Fees for the October and November invoices. JoySuds also stated that it had questions about the hours billed by Aero's Lead/Router during the month of October given that there had been a decrease in the shipment of JoySuds' product.

---

[1] A copy of Aero's December 2022 invoice, as discussed below, is also attached as Exhibit 2.

4

21. Other than the Transportation Fees and the labor costs associated with Aero's Lead/Router, JoySuds did not dispute any other portions of the October or November invoices. In other words, JoySuds did not dispute the Services Fees for labor costs (other than the Lead/Router's hours), materials, capital expenses, storage, and technology. Nor did JoySuds dispute that it owed Aero the Monthly Minimum for October and November.

22. In response to JoySuds' questions, Aero provided documentation supporting the Transportation Fees that Aero received directly from the carrier(s) that transported JoySuds' products. As Aero explained, the Transportation Fees for October and November represented the actual market costs of shipping JoySuds' products. Aero does not set shipping pricing.

23. Rather, as required by the Agreement, Aero worked with a network of carries and brokers to ship JoySuds' products. Aero then paid the carriers and brokers the actual, real-world cost of shipping JoySuds' products. At all times, Aero worked diligently and in good faith to secure the most cost efficient methods of transportation from the highest quality carries available to satisfy JoySuds' shipping needs.

24. As to JoySuds' questions about the hours billed by Aero's Lead/Router, Aero explained that it had decreased flexible labor resources as the volume of JoySuds' products had been reduced. This left Aero's Lead/Router as the sole dedicated resource doing the majority of work for JoySuds' account.

25. Aero also reminded JoySuds that, regardless of its unfounded questions about the Transportation Fees and the Lead/Router's hours, the Agreement required JoySuds to pay the Monthly Minimum and the other undisputed Service Fees in a timely manner.

26. Despite Aero providing ample support for the October and November invoices and making a specific demand for payment of the Monthly Minimums and the other undisputed Service Fees, JoySuds refused to make any payment to Aero.

27. JoySuds' attempts to dispute the October and November invoices were not in good faith, as required by Section 2.2 of the Agreement. If the issues JoySuds raised with the October and November invoices were truly in good faith, it would have paid Aero the undisputed portions of the invoices while the parties attempted to resolve the purportedly disputed issues. JoySuds did not do that. Instead, it unjustifiability withheld the entire amounts owed for the October and November invoices.

28. Additionally, JoySuds' basis for disputing the Transportation Fees was completely unfounded. In an email, an employee of Piney Lake (JoySuds' parent company) explained that JoySuds was disputing the Transportation Fees because Aero's team told him "in September that we should see lower costs moving forward." But Aero did not contractually guarantee shipping costs would go down. Rather, Aero simply expressed that the costs of shipping *could* go down as a result of future market trends. Needless to say, Aero has no control over prevailing market trends in the shipping industry.

29. The parties' informal discussions about future shipping costs is not good faith basis for JoySuds' failure to pay Aero. Aero paid the carries that shipped JoySuds' product their market rate. Per the Agreement, JoySuds is contractually required to compensate Aero for the Shipping Fees plus 9%. (Exhibit B to the Agreement.)

30. JoySuds would not accept Aero's explanations for the October and November invoices. Instead, every time Aero provided answers to JoySuds and supporting documents, JoySuds moved the goal post by asking new questions and raising other unfounded issues with

the October and November invoices.  JoySuds' objective was obvious—it was attempting to manufacture issues with Aero's invoices in effort to skirt its contractual obligations.

31. In a final effort resolve the matter, Aero provided JoySuds notice that, if payment for the October and November invoices was not received by January 20, 2023, Aero would consider JoySuds in material breach and terminate the Agreement for cause pursuant to Section 6.1.

32. JoySuds failed to pay the October and November invoices by January 20, 2023 and the Agreement was terminated for cause by Aero.

33. As a result of Aero's termination of the Agreement for cause, JoySuds is responsible for Aero's December 2022 invoice in the amount of $125,509.53.  JoySuds is also responsible for the Monthly Minimum for the remainder of the Agreement's term in the amount of $690,140.00. (Agreement § 2.1.)

34. JoySuds' brazen and indefensible refusal to honor its obligations under the Agreement has harmed Aero in an amount to be determined at trial in excess of $1 million.

## COUNT I
**(Breach of Contract)**

35. Aero incorporates by reference the above allegations as if fully set forth herein.

36. The parties entered into the Agreement on January 12, 2021.

37. Aero adequately performed all of its duties under the Agreement.

38. JoySuds materially breached its obligations under Sections 2.1 and 2.2 of the Agreement by failing to pay Aero's October and November invoices in the amount of $496,514.96.

39. JoySuds further materially breached its obligations under Sections 2.1 and 2.2 of the Agreement by attempting to dispute Aero's October and November invoices without a good

7

faith basis and failing to pay the undisputed Monthly Minimums and other undisputed Service Fees.

40. Because Aero terminated the Agreement with cause, JoySuds is liable for Aero's December 2022 invoice in the amount of $125,509.53. JoySuds is further liable for the Monthly Minimums for the remainder of the Agreement's term in the amount of $690,140.00.

41. Section 2.2 of Agreement further provides that JoySuds owes a late fee of 1.5% on all amounts not paid within 30 days.

42. As a direct and proximate result of JoySuds breaches of the Agreement, Aero has incurred damages in the total principal amount of $1,312,164.49, plus prejudgment interest accruing at the contract rate of 1.5% per month and post-judgment interest, plus any other damages that Aero will prove at trial.

## COUNT II
**(Breach of Express and Implied Covenant of Good Faith and Fair Dealing)**

43. Aero incorporates by reference the above allegations as if fully set forth herein.

44. The parties' Agreement contained an express and implied covenant of good faith and fair dealing that prohibited either party from doing anything that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

45. JoySuds breached this covenant by executing a bad faith plan to withhold amounts due to Aero under the Agreement without justification. Specifically, JoySuds refused to pay Aero the undisputed Monthly Minimum and other undisputed Service Fees associated with Aero's October and November invoices.

46. JoySuds' bad faith conduct has wrongfully prevented Aero from receiving the benefit of the Agreement for which it bargained, and has frustrated Aero's rights and reasonable expectations thereunder, damaging Aero in an amount to be proved at trial.

## COUNT III
### (Unjust Enrichment)

47. Aero incorporates by reference the above allegations as if fully set forth herein.

48. Count Three is hereby pled in the alternative to Count One.

49. At all relevant times herein, Aero conferred a benefit or benefits to JoySuds.

50. JoySuds had knowledge of the benefit or benefits that Aero conferred.

51. JoySuds voluntarily accepted, retained, appreciated and received the benefit or benefits that Aero provided at Aero's expense.

52. JoySuds was enriched by the benefit or benefits provided by Aero.

53. JoySuds unjustly retained a benefit to Aero's detriment.

54. Aero's retention of the benefit violates the fundamental principles of justice, equity and good conscience.

55. As a direct and proximate result of JoySuds' unjust enrichment, Aero has incurred damages in the total principal amount of $1,312,164.49, plus prejudgment interest accruing at the contract rate of 1.5% per month and post-judgment interest, plus any other damages that Aero will prove at trial.

## PRAYER FOR RELIEF

Wherefore, Aero seeks an order:

A. Declaring and finding that JoySuds breached the terms of the Agreement, including Sections 2.1 and 2.2, and the implied covenant of good faith and fair dealing;

B. Awarding Aero all available damages for JoySuds' wrongful conduct;

C. Awarding pre- and post-judgment interest to Aero at the statutory rate;

D. Awarding Aero the costs, expenses and disbursements of this action; and

E. Awarding Aero such other and further relief as this Court may deem just, equitable, and proper.

## JURY DEMAND

Aero, by and through counsel, hereby request a trial by jury with the maximum number of jurors permitted by law on all claims so triable

Dated: January 23, 2023

Respectfully submitted,

*/s/ Bryce J. Yoder*
Bryce J. Yoder (NY Bar # 4687281)
Matthew M. Allen (*pro hac vice forthcoming*)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio  45202
Phone: (513) 579-6400
Fax: (513) 579-6457
byoder@kmklaw.com
mallen@kmklaw.com

*Attorneys for Plaintiff Aero Fulfillment Services, Corporation*

12322526.1